

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00487-CR

DENIQUA FREEMAN

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Deniqua Freeman appeals her conviction for the state jail felony of theft of property under $1,500 with two prior theft convictions.[2] In her sole issue, Freeman contends that the evidence is insufficient to support the jury's verdict. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 31.03(a), (b), (e)(4)(D) (West Supp. 2012).

## II. BACKGROUND

Freeman and Melissa Richardson were together in a Walmart in Arlington, Texas, on June 16, 2011. According to Walmart's loss prevention employees, because the two exhibited furtive movements and suspicious actions, the employees began to watch them closely through the store's video surveillance cameras. According to loss prevention, Freeman had a large purse; sometimes it was on her arm, and sometimes it was on her cart. But loss prevention associated the purse as being Freeman's. Loss prevention observed Richardson place unpurchased items into her own purse. And although never witnessing Freeman place anything inside her purse, loss prevention believed that she had also done the same thing. Loss prevention, however, did observe Freeman switch a video game container (later discovered empty) from her cart for a new video game from a sales associate. After making the switch, loss prevention observed Freeman stand in front of the sales associate as Richardson stood behind the sales associate, taking other games and putting them into Richardson's waistband. The video from the in-store cameras was played for the jury.

At one point, loss prevention observed Freeman with a package of diapers. Freeman then left the view of the cameras. Upon returning to their view, the diapers were no longer visible. Loss prevention presumed that Freeman had placed them in her purse, "because the purse was large and the diapers were [no longer] in the cart and she didn't put the diapers on any of the side aisles." As

the two approached the front of the store, Freeman placed her purse in the bottom level of her shopping cart. Freeman then purchased some $5 DVDs, but she did not purchase diapers or video games.

As the two left the store, loss prevention attempted to detain both women. Both refused to cooperate and walked away from loss prevention in two different directions. As Freeman approached her car, Officer Jose Alvarez of the City of Arlington Police Department pulled into the parking lot and detained her. After placing her in his patrol car, he also apprehended Richardson. At that point, Alvarez "went ahead and . . . retrieved their purses . . . and [he] placed them on top of the trunk of [his] patrol car." He then searched the purses.

Alvarez said that Freeman's purse contained items that appeared to have been taken without purchase: "They seemed to be items from the store due to them being freshly new. They weren't in the plastic bags that someone would have purchased . . . which [made him believe] that they were taken out of the store." Loss prevention itemized the merchandise found in Freeman's purse and determined that they had been taken from Walmart without consent. Included in the items found in Freeman's purse were a package of diapers and video games. According to Alvarez and loss prevention, Freeman never denied that the purse containing these items was hers.

A jury found Freeman guilty of the offense of theft of property under $1,500 with two prior theft convictions. The jury assessed punishment at two years in jail. This appeal followed.

3

### III. DISCUSSION

In her sole issue, Freeman contends that the evidence is insufficient to support the jury's verdict. Specifically, Freeman contends that she "was never seen concealing any merchandise." Further, Freeman contends that there is "no evidence, or merely a 'modicum' of evidence" that she acquired or exercised control over the property found in her purse. We disagree.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638.

### B. Applicable Law

The offense of theft occurs when a person unlawfully appropriates property with the intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 31.03(a). The term "[a]ppropriate" includes both acquiring and otherwise exercising control over the property. *See id.* § 31.01(4)(B) (West Supp. 2012). Appropriation is unlawful when (1) it is without the owner's effective consent or (2) the property is stolen and the defendant appropriates the property knowing it

4

was stolen by another. *Id.* § 31.03(b). "Deprive" means to dispose of property in a manner that makes recovery of the property by the owner unlikely. *Id.* § 31.01(2)(C). An "[o]wner" is a person who has title to property, possession of the property, whether lawful or not, or a greater right to possession of the property than the defendant. *Id.* § 1.07(a)(35)(A) (West Supp. 2012).

Intent to deprive is determined from the words and acts of the accused. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. [Panel Op.] 1981); *Roberson v. State*, 821 S.W.2d 446, 448 (Tex. App.—Corpus Christi 1991, pet. ref'd). To this end, "evidence sufficient to show an accused exercised control over property without consent of the owner, intending to deprive him of it, is always enough to prove theft." *Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992). That is, if an accused is found in possession of recently stolen property and, at the time of her arrest, fails to make a reasonable explanation showing her honest acquisition of the property, the jury may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). To draw the inference of guilt from the sole circumstance of possession of stolen property, the accused must be shown to have been in recent possession of the property after the actual theft. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). The possession must be personal, recent, and unexplained, and it must involve a distinct and conscious assertion of right to the property. *Todd v. State*, 601 S.W.2d 718, 720 (Tex. Crim. App. 1980).

Ordinarily, whether stolen property is recently possessed by the accused is a question of fact. *Sutherlin*, 682 S.W.2d at 549. Although cases vary based on factors such as ease of transferability of the property, generally the shorter the period of time between the taking of the property and the defendant's possession of the property, the stronger the inference that the defendant knew the property was stolen. *See Naranjo v. State*, 217 S.W.3d 560, 571 (Tex. App.—San Antonio 2006, no pet.).

If the accused offers an explanation of her possession of recently stolen property at the time of her arrest, the record must show that the explanation is either false or unreasonable before the evidence supporting the conviction will be deemed sufficient. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether the accused's explanation is false or unreasonable is a question of fact. *Id.* Knowledge that property was stolen can also be shown by circumstantial evidence. *Chudleigh v. State*, 540 S.W.2d 314, 317 (Tex. Crim. App. 1976).

## C.    Analysis

Here, both Alvarez and loss prevention testified that Freeman's purse contained items that had been recently taken from Walmart. Two of the items—diapers and video games—had been seen in Freeman's possession while she was in the store. And even though she purchased some items, she did not purchase any of the items found in her purse. Freeman demonstrated a distinct and conscious assertion to the property found in her purse when she placed it,

6

containing the items, in the bottom level of her cart and left Walmart without paying for them. She also refused loss prevention's attempts to escort her back into the store. This flight demonstrated a consciousness of guilt about her having taken the items unlawfully. *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1039 (1990) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn."). Furthermore, these items were found on her immediately upon her leaving the store. *See Jackson v. State*, 12 S.W.3d 836, 839 (Tex. App.—Waco 2000, pet. ref'd) ("Generally, the shorter the interval between the theft and the possession, the stronger the inference, although the cases will vary according to such factors as the ease with which such property can be transferred.") (citing *Hardage v. State*, 552 S.W.2d 837, 840 (Tex. Crim. App. 1977)). And Freeman never denied that it was her purse and never offered an explanation of her possession of the unpaid-for items. *See Adams*, 552 S.W.2d at 815.

Viewing the evidence in the light most favorable to the verdict, we conclude and hold that a rational factfinder could have found beyond a reasonable doubt that Freeman took the items found in her purse from Walmart without consent, with the intent to appropriate these items to herself and with the intent to deprive Walmart of these items. *See* Tex. Penal Code Ann. § 31.03(b); *Jackson*, 443 U.S. at 319, 99 S. Ct. 2789. We overrule Freeman's sole issue on appeal.

## IV. CONCLUSION

Having overruled Freeman's sole issue, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 30, 2012